O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ELVIRA CASTILLO,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | Case No. CV 15-07061-DFM<br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff Elvira Castillo ("Plaintiff") appeals from the final decision of the Administrative Law Judge ("ALJ") denying her applications for Social Security disability benefits. On appeal, the Court concludes that the ALJ erred when finding that Plaintiff could perform her past relevant work as a general clerk and receptionist. The ALJ's decision is therefore reversed and the matter is remanded for further proceedings consistent with this opinion.

## I.

## BACKGROUND

Plaintiff Elvira Castillo ("Castillo") applied for supplemental security income and disability insurance benefits on October 6, 2011, alleging disability beginning on July 19, 2011. Administrative Record ("AR") 242. The

Commissioner denied Castillo's applications initially and again on appeal, and Castillo requested a hearing. AR 152-66. The hearing took place on February 4, 2014. AR 62-95. The Administrative Law Judge ("ALJ") issued his decision on February 14, 2014, finding that Castillo could perform her past relevant work as a receptionist and general clerk. AR 45-57. The Appeals Council denied Castillo's request for review, and she filed this civil action on September 7, 2015. AR 8-13, 21; Dkt. 1.

The parties' Joint Stipulation presents six issues:

(1)     Did the ALJ err in assessing the opinions of Castillo's treating and examining doctors?

(2)     Did the ALJ properly evaluate Castillo's mental and physical impairments at step two of the five-step sequential evaluation process?

(3)     Did the ALJ properly undertake the step-three analysis in assessing whether Castillo's systemic lupus erythematosus ("lupus")[1] met or equaled a listed impairment?

(4)     Did the ALJ err at step four in finding that Castillo could perform her past relevant work as a receptionist and general clerk?

(5)     Did the ALJ properly discredit Castillo's testimony?

(6)     Did the ALJ properly discredit third-party written testimony?

Dkt. 16 ("JS") at 4, 32-33.[2]

///

///

---

[1] Lupus is a chronic, multisystem, inflammatory disorder of autoimmune etiology. Robert S. Porter, M.D., et al., eds., The Merck Manual of Diagnosis and Therapy 305 (Merck Research Labs., 19th ed. 2011) ("Merck Manual").

[2] Citations to the Joint Stipulation refer to the CM/ECF pagination.

## II.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)). "A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.
## THE EVALUATION OF DISABILITY

**A.    Five-Step Sequential Process**

A person is "disabled" for purposes of receiving Social Security benefits if he is unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or

is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). A claimant for disability benefits bears the burden of producing evidence to demonstrate that he was disabled within the relevant time period. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); Lester v. Chater, 81 F.3d 821, 828 n. 5 (9th Cir. 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not, then the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his or her ability to do basic work activities. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does, then the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1. Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment(s) do not, then the fourth step requires the claimant to prove that he or she does not have the sufficient residual functional capacity ("RFC") to perform his or her past work. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); Drouin, 966 F.2d at 1257. If the claimant meets this burden or has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**B.    The ALJ's Application of the Five-Step Process**

At step one, the ALJ determined that Castillo had not engaged in substantial gainful activity since the alleged onset date. AR 47. At step two, the

4

ALJ determined that Castillo had the severe impairments of lupus, hypothyroidism, hepatitis C, and gastroesophageal reflux disease. AR 49. At step three, the ALJ found that Castillo's medically determinable impairments did not, either singly or in combination, meet the criteria of any Listing. AR 50. The ALJ determined that Castillo had the RFC to perform sedentary work, avoiding concentrated exposure to extreme heat and hazards. AR 50-55. The ALJ found at step four that Castillo could perform her past relevant work as a receptionist and general clerk. AR 55-56.

**IV.**

**DISCUSSION**

**A.**    **Issue One: Examining and Treating Doctors**

Castillo argues that the ALJ improperly rejected the opinions of three treating or examining physicians. JS at 4-20, 25-27.

   **1.**    **Relevant Facts**

      a.    Dr. Krispinsky

Castillo saw Dr. Megan Krispinsky as her primary care physician between August 2011 and January 2014. See AR 80, 443, 658. On August 1, 2013, Dr. Krispinsky noted:

> Patient has not been to work in 2 weeks . . . She states that she feels pain all over, but that the most pain is felt in her hands and left shoulder . . . She states that her mental status is fine and that she does not feel depressed. She reports having a very good outlook on life. In more recent visits with the patient she was very depressed and her antidepressant had to be increased. She was given names of places to go for counseling but the patient states she did not want to go and that she does not think she has to go. The patient feels she cannot work in this state. She is applying for full disability. I stress to the patient that with pain control, which

5

could be achieved with starting Lyrica and counseling, that she
could work and perform all daily living activities. She states it is
not possible.

AR 708.

In December 2013, Dr. Krispinsky concluded that Castillo could sit for
one hour, stand for 30 minutes, sit for four hours and stand or walk for two
hours in an eight-hour workday, lift less than ten pounds frequently, ten to
twenty pounds occasionally, and 50 pounds never. AR 486. Dr. Krispinsky
stated that Castillo had significant limitations in repetitive reaching, handling,
or fingering. Id. Dr. Krispinsky concluded that Castillo would need to walk for
five minutes every hour, and would need to take unscheduled ten-minute
breaks every 1-2 days. AR 485-86. Dr. Krispinsky also concluded that Castillo
would need to be absent from work twice a month due to her impairments or
treatment. AR 487. Dr. Krispinsky stated that Castillo could bend and twist at
the waist for 80 percent of an eight-hour workday. Id.

     b.   Dr. Greger

Dr. Stephanie Greger replaced Castillo's rheumatologist when that
doctor left the practice. AR 80. Dr. Greger saw Castillo once in November
2013 and once in January 2014. See AR 636-40. On January 21, 2014, Dr.
Greger diagnosed Castillo with lupus, Sjögren's syndrome, myositis, and
fibromyalgia.[3] AR 615. Dr. Greger concluded that Castillo could sit for 30
minutes, stand for 15 minutes, sit for four hours and stand or walk for two

---

[3] Sjögren's syndrome is a "relatively common chronic, autoimmune,
systemic, inflammatory disorder of unknown cause. It is characterized by
dryness of the mouth, eyes, and mucus membranes." Merck Manual at 303.
Myositis is an "uncommon systemic rheumatic disorder[]." Id. at 299.
Fibromyalgia is a "common nonarticular disorder of unknown cause
characterized by generalized aching . . . widespread tenderness of muscles . . .
fatigue . . . and poor sleep." Id. at 375.

hours in an eight-hour workday, and needed unscheduled breaks of fifteen to twenty minutes four or more times a day in an eight-hour workday. AR 618. Dr. Greger also opined that Castillo could lift and carry ten pounds or less only occasionally, use her hands for grasping, turning, twisting, and fine manipulation for 25 percent of an eight-hour workday, reach for 20 percent of an 8-hour workday, and bend 15 percent and twist 10 percent of an 8-hour workday. AR 619. For every possible environmental restriction, Dr. Greger checked "avoid even moderate exposure." Id. Dr. Greger claimed that Castillo would need to be absent from work as a result of her impairments more than 3 times a month—the maximum option available. AR 620.

c.   <u>Dr. Wendel</u>

Dr. Isadore Wendel is the state agency psychological consultative examiner who performed a mental examination of Castillo and prepared a report dated November 2, 2012. AR 475-78. Dr. Wendel noted that Castillo denied a history of mental health treatment. AR 476. Dr. Wendel recorded that Castillo was oriented to basic personal information, could name the U.S. President, and could name the prior two U.S. Presidents when prompted with first names. Id. at 477. He noted that her memory was adequate, she was alert, and she adequately sustained concentration during the interview. Id. Her thought process showed no aberrations, although she had difficulty giving high-level answers to abstract verbal reasoning questions. Id. Her insight and judgment were "apparently good." Id.

Dr. Wendel diagnosed Castillo with major depression in partial remission with medication. Id. Dr. Wendel also concluded, based on "apparently credible report," that Castillo's activity was "considerably limited due to pain." AR 478. Castillo had "a marked [reduction] in the activities of daily living, due to the physical effects of her illness, by apparently credible self-report." Id. Castillo had "moderate impairment" in "concentration,

7

persistence, and pace, due to interference with pain and dizziness," and would likely "evidence repeated episodes of emotional deterioration in work-like situations due to pain and dizziness." Id.

### d.   State Consultants

Two state agency doctors reviewed Castillo's medical records. On April 6, 2012, L. Bobba, M.D., concluded that Castillo had the severe impairment of lupus. AR 102. He found that Castillo's statements about her symptoms were not substantiated by the objective medical evidence, and that she was partially credible in that her lupus symptoms were controlled by medication. AR 102-03. He concluded that she had no manipulative limitations and her only environmental limitation was extreme heat and hazards. AR 103-04. On November 30, 2012, after reviewing Castillo's medical records and Dr. Wendel's report, F. Wilson, M.D., reached the same conclusions as Dr. Bobba and noted that records showed her lupus was controlled. AR 131-33. Dr. Wilson concluded that Dr. Wendel's opinion relied heavily on Castillo's subjective reports and contained inconsistencies. AR 133.

A third state agency doctor reviewed Castillo's medical records and Dr. Wendel's report. On December 6, 2012, Kim Morris, Psy. D., noted that Dr. Wendel had opined on both of Castillo's physical and psychological impairments. AR 142-43. Dr. Morris observed that because Dr. Wendel was a psychologist, her conclusions regarding Castillo's physical symptoms should be given no weight. Dr. Morris concluded that Castillo's depression was in partial remission with medication and that her depression was not severe. Id.

### 2.   Analysis

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did not treat or examine the plaintiff. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Lester, 81 F.3d at 830. A treating

physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. Lester, 81 F.3d at 830. The ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion, or an examining physician's opinion in favor of a non-examining physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Lester, 81 F.3d at 830-31. If the treating physician's opinion is uncontroverted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The factors to be considered by the adjudicator in determining the weight to give a medical opinion include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician and the "nature and extent of the treatment relationship" between the patient and the treating physician. Orn, 495 F.3d at 631; see also 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(2)(i)-(ii).

   a.   Dr. Krispinsky

In concluding that Castillo had the RFC to perform sedentary work, the ALJ gave great weight to the state agency physical medical consultants who never treated or examined her. AR 50, 54. The ALJ considered, but did not give great weight to Dr. Krispinsky's opinion, reasoning as follows:

> The undersigned finds [Dr. Krispinsky's] opinion is not entirely reasonable given the objective medical evidence and claimant's testimony. The claimant's diagnosis of lupus suggests that she may experience fatigue and should be limited to a lower level of exertional work to avoid exacerbation of this condition.

9

Additionally, although the claimant reported hand pain, the medical records show minimal treatment related to this condition. In fact, Dr. Krispinsky stressed that the claimant should try to get her pain under control and attend counseling to help her be able to return to work . . . This suggests that Dr. Krispinsky does not entirely agree with the claimant's alleged limitations.

AR 54-55.

The ALJ articulated specific and legitimate reasons for not giving great weight to Dr. Krispinsky's opinion. As discussed above, Dr. Krispinsky's notes from August 2013 showed that with appropriate treatment, Castillo could work and perform all daily living activities. See AR 708. Castillo claims that Dr. Krispinsky's notes undermine only Castillo's complaints, not Dr. Krispinsky's conclusions in December 2013. JS at 8. The Court disagrees. Dr. Krispinsky's notes reflect that Dr. Krispinsky believed that with proper pain medication and counseling, Castillo could return to work and perform "all daily living activities." In effect, Dr. Krispinsky concluded that Castillo's pain was not disabling. See Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The record supports the ALJ's finding that Dr. Krispinsky did not agree with Castillo's alleged limitations—or rather, believed that these alleged limitations could be controlled with proper treatment.

Castillo next argues that "the medical records do, in fact, show that [Castillo was] treated for pain, swelling, and weakness in her hands." JS at 8, 10. The ALJ never stated that Castillo did not receive treatment for her upper extremity pain. Rather, the ALJ wrote that "the medical records show minimal treatment related to" Castillo's hand pain, AR 54, which the ALJ noted at the hearing primarily affected her left, non-dominant side, AR 92. Castillo

reported left hand, wrist, and shoulder pain at various points in 2012 and 2013, and that she would take Norco when the pain became bad and also engaged in physical therapy. See, e.g., AR 562, 569, 572, 575, 584, 689, 701, 708. Her medical records reflect significant improvement in that pain with minimal treatment. In January 2012, she no longer had left shoulder pain. AR 432. In April 2012, she had only intermittent left shoulder pain. AR 424. In August 2012, her left upper extremity pain had improved with physical therapy, and she had gained strength; physical examinations showed no pain to palpitation and intact sensation. AR 582. In December 2012, Castillo was doing "very well" and "completely pain free," even asking to discontinue medication due to her improvement. AR 576. In April 2013, Castillo had started working at a bakery—a job that was far more taxing than a sedentary position—where she would push carts weighing more than 50 pounds, remove racks, and put products on the tables and package, label, and put them on the floor. AR 68. That same month, her initial pain during her shifts had decreased; a month later, she was experiencing no pain. AR 570-71. In August 2013, Castillo reported a sudden increase in hand and left shoulder pain that prevented her from continuing to work at the bakery and stated to Dr. Krispinsky that she was applying for full disability. AR 708. Importantly, at this time, Dr. Krispinsky wrote: "I stress to the patient that <u>with pain control, which could be achieved with starting Lyrica and counseling, that she could work and perform all daily living activities</u>. She states it is not possible." <u>Id.</u> (emphasis added). These records reflect minimal treatment for Castillo's hand and upper extremity pain, and also specific and legitimate reasons for giving less weight to Dr. Krispinsky's conclusion that Castillo had "significant limitations" in repetitive reaching, handling, or fingering.

　　　Third, Castillo argues that her testimony was not inconsistent with Dr. Krispinsky's opinion. JS at 8-10. Again, the Court disagrees. Castillo at times

11

testified that her symptoms were more severe than the limitations offered by Dr. Krispinsky. For example, Castillo claimed she could lift no more than ten pounds; Dr. Krispinsky concluded she could lift 20 pounds occasionally. AR 81, 486. Castillo claimed that she could not sit for longer than 20 or 30 minutes or stand for longer than 10 or 15 minutes; Dr. Krispinsky opined that she was limited to one hour and 30 minutes, respectively. AR 79, 486.

Last, Castillo argues that the state agency physicians' opinions were not substantial evidence to support rejecting the treating physicians' opinions. JS at 10-11. Castillo does not give any support for the contention that Dr. Bobba's, Dr. Wilson's, and Dr. Morris's review of the record as of the end of 2012—combined with the ALJ's review of the entire record and assessment of the treating and examining physicians' opinions and Castillo's credibility—could not support the ALJ's conclusions, as this Court finds they do.

b.   Dr. Greger

The ALJ gave little weight to Dr. Greger's opinion, which he described as "brief, conclusory, and inadequately supported by clinical findings," reasoning as follows:

> Dr. Greger . . . did not provide medically acceptable clinical or diagnostic findings to support the overly restrictive functional assessment. This opinion is inconsistent with the objective medical evidence as a whole, which shows good improvement with conservative treatment of medications, mild physical findings, and unremarkable diagnostic findings. Moreover, Dr. Greger noted that she had only seen the claimant since November 2013 and saw her twice per month, which indicates that she saw her a total of two times prior to giving an opinion. Therefore, although Dr. Greger does have a treating relationship with the claimant, the record reveals that actual treatment has been over a relatively brief

12

period. As a result, the treating relationship did not last long enough for Dr. Greger to have obtained a longitudinal picture of the claimant's medical condition.

AR 55.

Castillo first contends that the ALJ's reasons for rejecting Dr. Greger's opinion fail for the same reasons that his rejection of Dr. Krispinsky's opinion fails. JS at 14. As explained above, the ALJ's reasons with respect to Dr. Krispinsky's opinion were valid.

Castillo next argues that the ALJ should have found that she had the severe impairment of fibromyalgia, citing Dr. Greger's diagnosis. JS at 14-16. The ALJ did not specifically discuss Dr. Greger's fibromyalgia diagnosis in his decision. However, the ALJ otherwise gave specific and legitimate reasons for rejecting Dr. Greger's findings. See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (noting that ALJ does not need to discuss every piece of evidence in the record as long as the decision is supported by substantial evidence). Furthermore, a mere diagnosis does not establish a severe impairment. Febach v. Colvin, 580 F. App'x 530, 531 (9th Cir. 2014).

Castillo also argues that the ALJ erred because Dr. Greger "took over" as treating rheumatologist from her prior doctors and had "full access" to her "extensive treatment history." JS at 17. Castillo cites no authority to support her argument that past visits with other physicians in the same practice should be attributed to a treating physician as evidence of a significant longitudinal relationship. Castillo points out that in Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994), two visits in a 14-month period was enough to establish a treating physician's relationship. JS at 27. Ghokassian is inapposite. In that case, the ALJ's only reasons for discounting the doctor's opinion were that the doctor saw the patient for the first time a year before the hearing and he did not identify the interpreter who accompanied the patient. Ghokassian, 41 F.3d

13

at 1303-04. Here, the ALJ acknowledged that Dr. Greger was a treating physician and gave several legitimate reasons for discounting her opinions. AR 55. The ALJ permissibly accorded less weight to Dr. Greger's opinion based on the brevity of that relationship. 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); 20 C.F.R. § 416.927(c)(2)(i) (same).

Last, Castillo argues that the ALJ erred in characterizing Castillo's response to her medical care as "good improvement with conservative treatment of medications." JS at 16-17. As laid out in Section IV.A.2, supra, substantial evidence supported the ALJ's conclusions that with medication, Castillo's lupus could be controlled. Castillo points out that the medical records show that she visited the hospital three times between July 2011 and January 2012, and made several trips to the emergency room between July 2011 and January 2014. See JS at 16 (record citations).[4] Even if the ALJ somehow erred in describing Castillo's treatment as "conservative," an ALJ's errors in evaluating the opinion of an examining physician are harmless if the ALJ nonetheless gave other specific and legitimate reasons supported by substantial evidence for rejecting the opinion. See DeBerry v. Comm'r of Soc. Sec. Admin., 352 Fed. Appx. 173, 176 (9th Cir. 2009).

---

[4] Castillo claims that she made 15 trips to the emergency room over 3 years. JS at 16. Some of these emergency room trips appear not to have been emergencies or were grouped together. For example, on November 30, 2011, the ER physician wrote: "She had several visits in the last few days with bilateral knee pain and swelling. I saw her knee two nights ago. Her exam was unremarkable at that time. She was sent to see Dr. Pearson who agreed and ordered x-rays. The x-rays were unremarkable. Dr. Pearson graciously came down and talked to the patient here in the emergency room, and after a long discussion with Dr. Pearson, she felt better about her pain." AR 411.

14

c.   <u>Dr. Wendel</u>

The ALJ found that Castillo's depression did not cause more than minimal limitations in her ability to perform basic mental work activities. AR 48. The ALJ gave little weight to Dr. Wendel's opinion, reasoning:

> [Dr. Wendel's] opinion is grossly inconsistent with [her] clinical findings, which show no more than mild limitations in concentration, persistence, and pace. Moreover, Dr. Wendel appeared to base [her] opinion largely on the claimant's physical complaints. However, Dr. Wendel is a psychologist, not a medical doctor. Therefore, the claimant's allegations related to [the claimant's] physical impairments are outside the area of Dr. Wendel's specialty and should not have been the sole basis for her opinion. Further, this opinion is inconsistent with the objective medical evidence, as well as the claimant's own testimony, which shows mild depression that was resolved with conservative treatment of an anti-depressant. The claimant's lack of treatment further indicates that this condition causes no more than minimal limitations.

AR 49. The ALJ gave great weight to the opinions of the state agency psychological consultative examiners. <u>Id.</u> The ALJ found the state consultants' opinions to be consistent with the objective medical evidence, which showed unremarkable mental status examinations, significant improvement with conservative treatment of medication, lack of counseling, and Castillo's admission that her symptoms were mild. <u>Id.</u>

The ALJ articulated specific and legitimate reasons for giving little weight to Dr. Wendel's opinion. Dr. Wendel's conclusions and clinical findings were contradictory because Castillo registered three out of three words immediately, three out of three words after several minutes, could perform

15

serial threes, was able to solve a simple financial problem, had coherent thought processes, and could understand what was said to her and make herself understood. AR 477. Given these clinical findings, the fact that Castillo did not perform the test perfectly is not enough to support Dr. Wendel's opinion.

Castillo argues that the ALJ should not have rejected Dr. Wendel's opinions regarding her "marked" restrictions in daily living because Dr. Wendel found Castillo's reports to be credible and medical records supported these reports. JS at 19. As noted above, the medical records do not entirely support Castillo's reports, and the fact that Dr. Wendel found Castillo's reports to be "credible" does not mean that the ALJ cannot discount Dr. Wendel's opinion for relying solely on Castillo's reports. See Ukolov v. Barnhart, 420 F.3d 1002, 1005-06 (9th Cir. 2005) (holding that a treating physician's restatement of a patient's subjective complaints did not support a finding of impairment because they were based solely on the patient's own perception or description of his problems).

Castillo also argues that the fact that Dr. Wendel was not a medical doctor is not legitimate reason to reject her opinions. JS at 19-20. This may be true with respect to a psychologist's opinions regarding mental impairments, but it is not the case with respect to a psychologist's opinions regarding physical impairments. See Bollinger v. Barnhart, 178 F. App'x 745, 746 n.1 (9th Cir. 2006) (holding that ALJ properly discounted psychologist's opinion regarding physical limitations because it was beyond psychologist's expertise). Dr. Wendel went beyond merely assessing the impact of Castillo's physical symptoms on her mental condition to opining on her physical symptoms themselves. See AR 478. The ALJ properly ignored these aspects of Dr. Wendel's opinion.

Last, Castillo argues that she did not testify that her depression was

16

1    "resolved" and that nothing in her testimony undermined Dr. Wendel's

2    opinion. JS at 20. The ALJ never stated that Castillo's depression was

3    "resolved." He stated that her depression was resolved with "conservative

4    treatment of an anti-depressant." AR 49. Castillo so testified, stating that her

5    depression was substantially, if not entirely, alleviated by a low dose of anti-

6    depressants. See AR 75-76. This is a further specific and legitimate reason for

7    giving little weight to Dr. Wendel's opinion.

8    **B.**    **Issue Two: Mental and Physical Impairments**

9         Castillo argues that the ALJ improperly assessed her mental and physical

10   impairments at step two, undermining the RFC finding. JS at 27-31.

11        "In step two of the disability determination, an ALJ must determine

12   whether the claimant has a medically severe impairment or combination of

13   impairments." Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725 (9th

14   Cir. 2011). The existence of a severe impairment is demonstrated when the

15   evidence establishes that an impairment has more than a minimal effect on an

16   individual's ability to perform basic work activities. Webb v. Barnhart, 433

17   F.3d 683, 686-87 (9th Cir. 2005); Smolen, 80 F.3d at 1290; 20 C.F.R. §§

18   404.1521(a), 416.921(a). The regulations define "basic work activities" as "the

19   abilities and aptitudes necessary to do most jobs," which include physical

20   functions such as walking, standing, sitting, pushing, and carrying, and mental

21   functions  such as understanding and remembering simple instructions;

22   responding appropriately in a work setting; and dealing with changes in a work

23   setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). The inquiry at this stage is "a de

24   minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at

25   1290 (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)). An impairment

26   is not severe if it is only a slight abnormality with "no more than a minimal

27   effect on an individual's ability to work." SSR 85-28, 1985 WL 56856, at *3

28   (1985); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). A "finding of no

disability at step two" may be affirmed where there is a "total absence of objective evidence of severe medical impairment." Webb, 433 F.3d at 688 (reversing a step two determination "because there was not substantial evidence to show that [the claimant's] claim was 'groundless'").

Castillo first argues that the ALJ erred in finding that Castillo had no severe mental impairment because Dr. Wendel's opinion and Castillo's treatment records document her depression and anxiety. JS at 29-30.

In evaluating the severity of a claimant's mental impairments, the ALJ is bound by 20 C.F.R. § 404.1520a, which requires a special psychiatric review technique. Keyser, 648 F.3d at 725. Specifically, the ALJ must determine whether an applicant has a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, determine the severity of the mental impairment, and then, if the impairment is severe, proceed to step three of the disability analysis. 20 C.F.R. §§ 404.1520a, 416.920a; Keyser, 648 F.3d at 725. The applicable regulations specify four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The first three functional areas are rated using a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The fourth functional area is rated using a four-point scale: none, one or two, three, and four or more. Id. A mental impairment is generally considered not severe if the degree of limitation in the first three functional areas is rated as "none" or "mild" and there have been no episodes of decompensation. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

The ALJ did not commit error here. The ALJ properly gave little weight to Dr. Wendel's opinion, as explained in Section IV.A.2.c, supra. The ALJ found that Castillo's mental impairments caused mild limitations in her daily living activities, social functioning, and ability to maintain concentration,

persistence, and pace, and she had experienced no episodes of decompensation. AR 48. Castillo points to nothing specific in her medical records to combat these findings (other than citing to pages in the record mentioning Castillo's complaints of depression and anxiety), and the ALJ cited evidence in support of his findings. Taking Celexa improved Castillo's symptoms. AR 48, 595. In October 2012, Castillo requested a referral to a mental health professional, but as of April 2013, had not scheduled an appointment. AR 48, 571, 580. In August 2013, Castillo stated that her "mental status is fine and that she does not feel depressed. She reports having a very good outlook on life." AR 48-49, 708. At the hearing, Castillo stated that the low dose of anti-depressant that she had been prescribed was helpful, and that she had only seen a counselor twice. AR 49, 75-76. State physician Dr. Morris reviewed the evidence and was consistent with the ALJ's finding. AR 49, 142.

Castillo also argues that the ALJ failed to properly assess Castillo's fibromyalgia and migraine headaches. JS at 30. The Court addressed the fibromyalgia issue in Section IV.A.2.b, supra. As for Castillo's migraines, Castillo's primary care physician did not diagnose her with migraines. See AR 483. Furthermore, the objective medical evidence does not suggest that her migraines more than minimally limited her ability to perform sedentary work, and Castillo does not cite to anything in the record to the contrary.

Last, Castillo argues that the ALJ should have included manipulative limitations in his findings. JS at 30-31. The Court addressed this argument above in Section IV.A.2.a, supra. Accordingly, remand is not warranted on Plaintiff's claim of error.

## C.    Issue Three: Castillo's Lupus As a Listed Impairment

Castillo argues that the ALJ erroneously found that Castillo did not meet or medically equal the criteria of a listed impairment of lupus at step three and

did not properly consider Dr. Greger's, Dr. Krispinsky's, or Dr. Wendel's opinions. JS at 39-41. Castillo also argues that ALJ should have obtained medical opinion evidence from a medical expert. JS at 40-41.

These arguments depend entirely on Castillo's argument in Issue One, which fails for the reasons set forth in Section IV.A.2.a-c, <u>supra</u>. The ALJ properly discounted the opinions of Drs. Greger, Krispinsky, and Wendel. Therefore, the ALJ was not required to obtain medical opinion evidence from a medical expert. <u>See</u> Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, *3-4 (July 2, 1996) (stating that an ALJ should obtain medical opinion evidence when additional medical evidence "in the opinion of" the ALJ may change the state agency medical or psychological consultant's finding that the impairment is not equal in severity to a listed impairment). Castillo does not explain how she would meet the criteria of the lupus listed impairment without great weight being given to the opinions of Drs. Greger, Krispinsky, and Wendel, and the burden was on her to make this showing. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 141, 146 n.5 (1987).

Castillo also argues that the ALJ's "boilerplate" conclusion is prohibited by <u>Marcia v. Sullivan</u>, 900 F.2d 172, 176 (9th Cir. 1990), in which the Ninth Circuit found that the ALJ had not adequately explained his step-three conclusion. JS at 39. The Ninth Circuit has recognized, however, that an ALJ need not recite the reasons for a step-three determination so long as the supporting evidence is discussed in the ALJ's decision—which it was here. <u>See</u> <u>Lewis v. Apfel</u>, 236 F.3d 503, 513 (9th Cir. 2001); AR 50-55. Plaintiff is not entitled to relief on this claim of error.

**D.    <u>Issue Four: Past Relevant Work</u>**

Castillo argues that the ALJ erred at step four in concluding that Castillo could perform her past relevant work as a receptionist and general clerk. JS at 31-33, 36-38.

20

At step four, the claimant has the burden to prove that she cannot perform her past relevant work either as actually performed or as generally performed in the national economy. <u>Carmickle v. Comm'r</u>, 533 F.3d 1155, 1166 (9th Cir. 2008). Although the burden lies with the claimant, the ALJ must make the requisite factual findings to support a conclusion that the claimant is capable of performing her past work. <u>Pinto v. Massanari</u>, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ does so by looking at the claimant's RFC and the physical and mental demands of the claimant's past relevant work. <u>Id.</u> at 844-45 (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)). The ALJ must make "specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." <u>Id.</u> at 845 (citing SSR 82-62). Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed work history report and the claimant's own testimony. <u>Id.</u> (citing SSR 82-61, 82-41). The Dictionary of Occupational Titles ("DOT") is the best source for how a job is generally performed. <u>Id.</u> at 845-46 (citations omitted).

Here, the ALJ found that Castillo was capable of performing her past relevant work of "receptionist," DOT 237.367-038, as actually and generally performed. AR 55-56. Castillo argues that because she only worked as a receptionist from May to June 2011, she did not "learn" the job as required by 20 C.F.R. §§ 404.1560(b)(1) and 416.960(b)(1) and therefore this work is not past relevant work. JS at 32. The Commissioner disputes this, arguing that Castillo testified at the hearing that she worked as a receptionist for six months. JS at 36 (citing AR 86-87). Castillo responds that the Commissioner is confusing Castillo's testimony about her work as a receptionist for one month in 2011 with her work as a secretary for six months in 2009 and 2010. JS at 37-38.

21

According to her work history report, Castillo worked as a "secretary" from December 2009 until May 2010 and a "receptionist" from May to June 2011. AR 263. In the former position, she walked for 2 hours, stood for 1 hour, sat for 2.5 hours, stooped for 1 hour, knelt for 30 minutes, crouched for 30 minutes, and wrote, typed, or handled small objects for 2.5 hours a day. AR 265. The heaviest weight she lifted was less than 10 pounds. Id. In the latter position, she walked for 1 hour, stood for 30 minutes, sat for 5.5 hours, stooped for 30 minutes, knelt for 30 minutes, and wrote, typed, or handled small objects for 5.5 hours a day. AR 264. The heaviest weight she lifted was less than 10 pounds. Id.

Although Castillo told the ALJ that she worked as a "receptionist" for six months (AR 86), her work history report shows that she worked as a secretary for six months and a receptionist for less than two months. AR 263. The mistake in terminology is understandable for a layperson like Castillo, given the similarities between the two jobs. The ALJ had a duty to clarify this contradiction. See Pinto, 249 F.3d at 844-45. If Castillo worked as a receptionist for only one or two months, then this past work would not be "past relevant work." The regulations define "past relevant work" as work done within the past 15 years that was substantial gainful activity and lasted long enough for a claimant to learn to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Vocational Expert ("VE") testified that work as a receptionist is semi-skilled with a Specific Vocational Preparation ("SVP") of 4, requiring between 3 and 6 months to learn. AR 86; DOT, Appendix C (4th ed. 1991). Thus, Castillo's job as a receptionist would not meet the definition of past relevant work.

The ALJ also found that Castillo was capable of performing her past relevant work of "general clerk," DOT 209.562-010, as actually performed. AR

22

56.[5] Castillo argues that, given her testimony about how she performed this past relevant work, her RFC limiting her to sedentary work would not enable her to do the work as performed. JS at 32-33, 37.

Sedentary work involves standing and walking "occasionally"—meaning that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, *5 (Jan. 1, 1983). Light work, on the other hand, requires a "good deal" of walking and standing—"off and on, for a total of approximately 6 hours of an 8-hour work day." Id. at *5-6. For her 2010 secretarial or "general clerk" job, Castillo wrote in her work history report that she walked for 2 hours, stood for 1 hour, sat for 2.5 hours, stooped for 1 hour, and crouched for 30 minutes. AR 265. Thus, the 2010 position Castillo described fell between sedentary and light work. Notwithstanding this testimony, the VE opined without explanation that as performed, Castillo's work as a secretary was sedentary. AR 91.

The law permits VEs to assist ALJs where an individual's RFC is "in the middle" of exertional ranges of work. See Moore v. Apfel, 216 F.3d 864, 870 (9th Cir. 2000). Here, Castillo's RFC was not in the middle of exertional ranges, but simply "sedentary." The Commissioner has not cited, and this Court has not found, any authority suggesting that an ALJ may rely on a VE's testimony for substantial evidence where the VE concluded, without any explanation or analysis, that a job that as-performed fell in between two exertional ranges should be classified in one rather than the other exertional range. The ALJ therefore erred by relying on the VE's conclusion that Castillo's past relevant work as a "general clerk" (or secretary) was sedentary.

_____

[5] The record shows that this conclusion referred to the "secretary" position she held from December 2009 to May 2010. See AR 55-56, 90-91.

Taken together, the ALJ's failure to resolve the ambiguity surrounding Castillo's work as a receptionist and the erroneous reliance of the VE's unexplained conclusion that Castillo's past relevant work as a secretary was sedentary notwithstanding her contrary testimony are not harmless. If a claimant can perform her past relevant work as actually performed or as generally performed, the Commissioner will find that she is not disabled. See Pinto, 249 F.3d at 845; see also 20 C.F.R. §§ 404.1520(f), 404.1560(b)(3), 416.920(f), 416.960(b)(3). Here, there was no error-free finding based on substantial evidence that Castillo could perform her past relevant work, either as actually or as generally performed. Because it is not clear from the record whether Castillo would be entitled to benefits at step four or step five, the appropriate remedy is to remand for further fact-finding at step four and, if appropriate, step five. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) ("The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court.").

**E.   Issue Five: Credibility Determination**

Castillo argues that the ALJ did not provide clear and convincing reasons for rejecting her testimony as not credible. JS at 42-45.

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged pain or other symptoms. Lingenfelter, 504 F.3d at 1036. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citing

24

Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir.1986)). To the extent that an individual's claims of functional limitations and restrictions due to alleged pain are reasonably consistent with the objective medical evidence and other evidence, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186 (July 2, 1996) (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear, and convincing reasons for discrediting a claimant's complaints. Robbins, 466 F.3d at 883. The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1283-84 n.8 (9th Cir. 1996)). The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. Id.

Here, the ALJ properly engaged in the required two-step analysis. First, he determined that Castillo had presented objective medical evidence of an underlying impairment that could reasonably be expected to produce her alleged symptoms. AR 52. He then concluded that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with the ALJ's RFC finding. Id. The ALJ gave numerous reasons for this conclusion. AR 52-55. Castillo claimed at the hearing that she could not get out of bed 4 or 5 days a month. AR 50, 77. She testified that she takes painkillers as often as necessary (which, at the time of the hearing, was every couple of days). AR 51, 72. Castillo claimed that she could only walk for 10 to 15 minutes before needing to lie down. AR 50, 73. The ALJ noted inconsistencies in Castillo's testimony, such as her trip to Texas, her intermittent use of pain medication, and her ability to

care for her own hygiene, prepare simple food, drive, go on short walks with her granddaughter, attend church, watch television, and read. AR 50-51; see, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that ALJ may consider many factors in weighing a claimant's credibility, including "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid").

The ALJ also noted that Castillo's allegedly disabling symptoms have been generally controlled with medication and that more aggressive treatment has not been necessary. AR 51. For example, between July 2011 (when she was first diagnosed with lupus) and August 2012, Castillo's steroid prescription was gradually reduced from 80 milligrams to 10 milligrams; she reported doing "well overall" on the lower dosages and it was noted that her lupus remained inactive and well-controlled. AR 52-53, 322-324, 586, 589-90. After an increase in her pain, she reported doing very well with no pain in December 2012 after being treated with additional pain medication and Ibuprofen. AR 53, 576, 579, 582. In early 2013, Castillo was treated with low dosages of pain medication and steroids, which allowed her to begin work at the bakery in spring 2013. AR 53, 570-71, 574, 587. A physical examination in August 2013 showed no active inflammation or deformities, normal gait, and normal strength. AR 53, 653. When Castillo reported a flare-up of pain and swelling in October 2013, she was taking only 2 milligrams of steroids; her dosage was increased to 20 milligrams and she reported that her pain and fatigue were alleviated. AR 53-54, 569, 649. Records from January 2014 show that she reported body pain, and, after diagnostic images were unremarkable, it was noted that her pain could be related to pain hypersensitivity and she was prescribed medication for nerve pain. AR 54, 657-58, 665, 725-26. A conservative treatment history is a legitimate basis for an ALJ to discount a claimant's credibility. See

1   Tommasetti, 533 F.3d at 1039; see also Fair v. Bowen, 885 F.2d 597, 604 (9th

2   Cir. 1989) (finding that the claimant's allegations of persistent, severe pain and

3   discomfort were belied by "minimal conservative treatment").

4        Castillo argues that several of the ALJ's reasons for rejecting her

5   testimony were not clear and convincing. First, Castillo disputes that her

6   activities of daily living, including her attempt to return to work in 2013,

7   undermined her claim that she has disabling functions. JS at 44. The Court

8   disagrees. As the ALJ set out in his description of Castillo's testimony, Castillo

9   testified that she could care for her own personal hygiene, prepare simple food,

10  drive, go for short walks with her granddaughter, attend church at least once a

11  week, read, and watch television. AR 51. Castillo was also able to perform a

12  far-from-sedentary job in a bakery for four months in 2013, where she pushed

13  carts weighing over 50 pounds, removed racks, put products on tables, and

14  packaged, labelled, and put products on the store floor. AR 67-68. While this

15  was an unsuccessful work attempt, it indicates that for four months, Castillo

16  maintained a job that required far more effort than her testimony would

17  suggest she was capable of. Thus, the ALJ properly considered Castillo's

18  activities of daily living in assessing her credibility. While it is true that "[o]ne

19  does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v.

20  Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting Fair, 885 F.2d at 603), the

21  extent of Castillo's activities support the ALJ's finding that her reports of the

22  severity of her impairments were not fully credible. See Bray v. Comm'r of

23  Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009); Curry v. Sullivan, 925

24  F.2d 1127, 1130 (9th Cir. 1991) (finding that the claimant's ability to "take

25  care of her personal needs, prepare easy meals, do light housework, and shop

26  for some groceries[] . . . may be seen as inconsistent with the presence of a

27  condition which would preclude all work activity").

28        Second, Castillo disputes that she received "routine and conservative"

27

treatment for her impairments. JS at 44-45. The number of Castillo's hospital and emergency room visits, considered in a vacuum, could constitute non-conservative treatment. However, upon admittance to the hospital or emergency room, Castillo was regularly "only prescribed medications and discharged without further intervention" and the "ALJ [therefore] properly considered this conservative treatment history in finding [her] not fully credible." See Mulligan v. Colvin, No. 14-1023, 2015 WL 5687661, at *4 (E.D. Cal. Sept. 25, 2015). Further, "it was proper for the ALJ to consider that [Castillo's] excessive pain testimony was undermined by evidence that [her] pain symptoms were well controlled with routine treatment including medications." Id. at *5; Warre, 439 F.3d at 1006 ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits").

Third, Castillo disputes that her medications have been "generally successful" in controlling her symptoms. JS at 44-45. As explained in Section IV.A.2, supra and herein, substantial medical evidence supported this finding.

Last, Castillo argues that the ALJ's observation that her medical condition should result in her having muscle atrophy was an unsupported medical assertion that the ALJ was not qualified to make. JS at 45. However, even assuming that the ALJ erred in relying upon this assertion, any error would be harmless because the ALJ's other reasons were supported by substantial evidence. See Carmickle, 533 F.3d at 1162-63 (including erroneous reason among other reasons to discount claimant's credibility harmless error where substantial evidence supports other reasons).

On appellate review, the Court does not reweigh the hearing evidence regarding Castillo's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting her credibility, which the ALJ did in this case. See Smolen, 80

28

F.3d at 1283-84. It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, as here, this Court may not engage in second-guessing. <u>See</u> <u>Thomas</u>, 278 F.3d at 959; <u>Fair</u>, 885 F.2d at 604. Therefore, remand is not warranted on this basis.

**F.    Issue Six: Third-Party Written Testimony**

Castillo argues that the ALJ erroneously rejected the written testimony of her sister regarding her symptoms and abilities. JS at 49-51, 52-53.

**1.    Relevant Facts**

Castillo's sister, Vickie Cortez, lives with Castillo and submitted a written statement dated October 11, 2012. AR 286-94. Cortez wrote that she cooked, cleaned, and shopped for Castillo, and that Castillo was limited by tiredness and left-side limitations. AR 286. Castillo could prepare simple food although Cortez did a lot of the cooking. AR 288. Castillo did chores "depending on how she feels." <u>Id.</u> Castillo was unable to drive, but reading every day and attending church at least once a week was a "strong part" of her life. AR 289-90. Castillo could not walk for more than 5 minutes without resting and could only pay attention for 30 minutes at a time. AR 291. Castillo sometimes could not lift a cup of coffee and became tired very easily. <u>Id.</u>

The ALJ considered Cortez's testimony but found it to be not credible to the extent it was inconsistent with the RFC finding. AR 52. The ALJ explained that by "virtue of the relationship as a sister of the claimant, the witness cannot be considered a disinterested party." <u>Id.</u> The ALJ also explained that, "[m]ost important," the "clinical or diagnostic medical evidence that is discussed more thoroughly below does not support her statements." <u>Id.</u>

///

29

### 2.      Analysis

An ALJ must consider all of the available evidence in the individual's case record, including written statements from caregivers and siblings. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006); Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052-54 (9th Cir. 2006). The ALJ may discount that testimony, however, by providing "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). While an ALJ may not dismiss "wholesale" testimony from "family witnesses" simply by virtue of their membership in a group, considering a witness's close relationship with the claimant is an appropriate reason for discounting testimony. See Smolen, 80 F.3d at 1289; Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

Here, the ALJ considered Cortez's statement and provided germane reasons for discounting that testimony. The ALJ discounted Cortez's statement not only because of her close relationship to Castillo, but also due to the fact that the medical evidence did not support her statements. AR 52; Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (noting that inconsistency with medical evidence is germane reason for discounting lay witness testimony). Castillo's pain was almost entirely resolved by 20 milligrams of prednisone, and her fatigue had greatly improved as of late October 2013. This occurred a year after Cortez's statement and two months after Castillo's primary care physician felt that Castillo could perform all daily activities and return to work with pain control and counseling. AR 708.

///
///
///
///
///
///

30

# V.

## CONCLUSION

While most of Castillo's arguments lack merit, her arguments regarding step four with respect to her past relevant work warrant remand for further fact-finding and analysis. Accordingly, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this opinion.

Dated: September 19, 2016

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

31